**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **T1 G1 DALLAS SOLAR MODULE (TRINA) LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-01470-O** |
| | § | |
| **TKO STAFFPROS, LLC,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**OPINION & ORDER**

Before the Court are Plaintiff's Partial Motion to Dismiss (ECF No. 10); Defendant's Response (ECF No. 15); Plaintiff's Motion to Dismiss Counterclaims (ECF No. 16); Defendant's Response (ECF No. 19); and Plaintiff's Reply (ECF No. 20). Plaintiff's first Partial Motion to Dismiss Counterclaims is **DENIED** as **MOOT** (ECF No. 10). Plaintiff's second Partial Motion to Dismiss Counterclaims remains pending and is addressed below (ECF No. 16).

Having considered the Motions, briefing, and applicable law, the Court **GRANTS** Plaintiff's Motion to Dismiss Counterclaims (ECF No. 16) and **DISMISSES** Defendant's Counterclaim.

## I. BACKGROUND[1]

This case arises from a dispute between Plaintiff T1 G1 Dallas Solar Module LLC ("T1" or "Plaintiff") and Defendant TKO StaffPros, LLC ("TKO" or "Defendant") concerning a staffing agreement between the parties. TKO entered into a Staffing Agreement ("the Agreement") with

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint. *See* Pl.'s Compl., ECF No. 1. At the 12(b)(6) stage, these facts are taken as true and viewed in the light most favorable to Plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

T1 to provide background check and employee-placement services for T1's manufacturing facility. Stephanie Yang Shao ("Shao"), TKO's Chief Human Resources Officer, signed the Agreement on T1's behalf.

T1 alleges that the employees TKO assigned to the facility were not adequately screened and that several had prior felony convictions, in violation of the Agreement. When T1 raised concerns about the employees' backgrounds, TKO provided background-check reports that T1 contends were fabricated. T1 consequently reconstituted its workforce, assigned Jason Compton ("Compton") to take over the hiring process, incurring related costs and disruption, and terminated the Agreement on November 21, 2025. T1 filed this lawsuit against TKO on December 31, 2025 (ECF No. 1), asserting claims arising from TKO's alleged failure to comply with the Agreement in its provision of fraudulent background-check reports.

TKO, in turn, filed its Original Answer and Original Counterclaim (ECF No. 7), and T1 filed a Partial Motion to Dismiss the Counterclaim (ECF No. 10). TKO subsequently filed its First Amended Counterclaim (ECF No. 13), and First Amended Answer (ECF No. 14), mooting the prior Partial Motion to Dismiss (ECF No. 10), and a Response to T1's First Partial Motion to Dismiss (ECF No. 15). T1 thereafter filed a Motion to Dismiss Defendant's Counterclaim (ECF No. 16). The Motions have been briefed and are now ripe for the Court's review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file

a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

## III. ANALYSIS

### A. The Common Law Fraud/Fraudulent Inducement Claim

1. <u>The Claim is Barred by the Economic Loss Rule</u>

Plaintiff argues that Defendant's counterclaim is barred by the economic loss rule; Defendant responds that the economic loss rule does not apply to fraudulent inducement claims. The Court agrees with Plaintiff.

Under Texas law, the economic loss rule "prohibits a plaintiff from using a tort cause of action as a vehicle to impose liability for a claim based in contract." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc*., 787 F.3d 716, 725 (5th Cir. 2015). Tort damages are recoverable when the defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties," but not when the alleged liability is premised solely on a breach of the parties' agreement. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Thus, the economic loss rule bars a tort claim "when no factual basis for the tort claim would exist had the defendant complied with the contract." *Lincoln Gen*., 787 F3d at 726.

TKO's fraudulent inducement claim is precisely the type of claim the economic loss rule prohibits. *Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001) (finding when a party has not been *induced* into a contract, there is no fraudulent inducement claim). TKO alleges that T1 represented that it intended to "continue using TKO's employees and services provided under the Agreement" and would pay TKO for those services.[2] But the Agreement was already in effect when T1 allegedly made these representations.[3] And the representations merely restate T1's existing contractual obligations to use TKO's services and pay for those services.[4] Thus, TKO's alleged injury arises from T1's purported failure to perform its obligations under the Agreement—not from any independent duty imposed by law. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 46–47 (Tex. 1998) ("[I]t is well established that the legal duty

[2] Def.'s First Am. Countercl. ¶ 68, ECF No. 13.
[3] Def.'s First Am. Countercl. ¶ 8, ECF No. 13.
[4] Compl. Ex. A (Agreement), ECF No. 1; Def.'s First. Am. Countercl. ¶ 8, ECF No. 13.

not to fraudulently procure a contract is separate and independent from the duties established by the contract itself.").

The Texas Supreme Court has recognized that the economic loss rule does not categorically bar fraudulent inducement claims. *Id*. Nonetheless, *Formosa* does not save TKO's claim because TKO has not alleged an actionable fraud/fraudulent inducement claim that is independent of the Agreement. Rather, TKO attempts to repackage T1's alleged failure to perform its contractual obligations as fraud. Had T1 complied with the Agreement, there would be no factual basis for T1's alleged tort claim. *See Lincoln Gen*., 787 F.3d at 726.

2. <u>The Claim Fails to Satisfy Rule 9(b)'s Heightened Pleading Requirement</u>

The heightened pleading standard for allegations of fraud or mistake requires a plaintiff to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). At a minimum, this requires a plaintiff to plead the "'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Williams v. Bell Helicopter Textron Inc*., 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 903 (5th Cir. 1997)). The Fifth Circuit strictly construes Rule 9(b) "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc*., 302 F.3d 552, 564-65 (5th Cir. 2002)). A plaintiff must also plead the requisite level of scienter for each claim. *Sorokolit v. State Farm Lloyds*, No. 4:21-CV-00420-O, 2021 WL 8533892, at *6 (N.D. Tex. July 12, 2021). Although scienter may be alleged generally, the plaintiff must still plead "specific facts supporting an inference of fraud." *See Herrmann Holdings Ltd.*, 302 F.3d at 565.

Here, T1 argues that TKO failed to plead fraud with the requisite particularity under Rule 9(b).[5] Although T1 acknowledges that TKO identified "Jason Compton and Stephanie Shao as the T1 employees who allegedly made a fraudulent statement"—thus identifying the "who"—T1 argues that TKO fails to identify the "what."[6] The Court agrees.

TKO alleges that, in mid-to-late October 2025, T1 "hatched [a] plan to string along TKO," intentionally "kept TKO in the dark about their plan to terminate TKO" and "had no intent to pay TKO for services requested or provided since late September 2025.[7] TKO further alleges that T1 thereby obtained $2,415,661.04 in unpaid services.[8] TKO also alleges that T1 "evidently decided around this time that the false concerns over TKO's background check reports were sufficient pretense to terminate the Agreement and avoid paying TKO."[9] But these allegations do not identify any specific fraudulent statement. Rather, TKO's theory appears to rest on T1's alleged failure to disclose its plan to terminate the Agreement and its alleged intent not to pay TKO. TKO identifies the alleged speakers but does not identify *what* Compton or Shao actually said that was false, *when* or *where* the statement was made, or *why* the statement was fraudulent. Accordingly, TKO has failed to plead the "time, place, and contents of the false representations" required by Rule 9(b). *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

3. <u>The Claim Fails to Establish the Required Elements of Fraud/Fraudulent Inducement</u>

Under Texas law, to assert fraud or fraudulent inducement a plaintiff must establish the same elements. *Croswell v. Martinez*, 120 F.4th 177, 188 (5th Cir. 2024). Specifically, the plaintiff must establish "(1) that a material representation was made; (2) that it was false; (3) that, when the

---

[5] Pl.'s Mot. Dismiss ¶ 11–13, ECF No. 16.
[6] Pl.'s Mot. Dismiss ¶ 11, ECF No. 16; Def.'s Countercl. ¶ 31, ECF No. 13.
[7] Def.'s Countercl. ¶¶ 31, 32, 35, ECF No. 13.
[8] *Id*. at ¶ 35.
[9] *Id*.

speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury." *Id.* (quoting *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

TKO's allegations fall short in several respects. Specifically, TKO fails to plausibly allege that T1's representations were false when made, that T1 knew they were false or made them recklessly, or that TKO relied on those post hoc representations in entering into the Agreement. TKO alleges that T1 "represented to TKO that they wanted to continue using TKO's employees and services provided under the Agreement."[10] TKO further alleges that Compton and Shao's representations that T1 intended to continue using TKO's services and would pay for those services "was false when made" because T1 had already decided to find pretext withhold payment for services rendered.[11] But TKO alleges no facts showing that T1 had already decided not to pay for TKO's services when those representations were made. Without such allegations, TKO fails to plausibly plead that T1's representations were false when made or that T1 knew they were false or made them recklessly.

Nor does TKO allege that it was induced to enter into the Agreement based on the challenged representations. "'Texas law has long imposed a duty to abstain from inducing another to enter into a contact through use of fraudulent misrepresentations. Certainly there can be no breach of that duty when one is not induced into a contract.'" *Flu Shots of Texas, Ltd. v. Lopez*, No. 3:13-CV-11-O, 2014 WL 1327706, at *8 (N.D. Tex. Apr. 3, 2014) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)). Thus, "when a party has not incurred a contractual obligation, it has not been induced to do anything." *Flu Shots of Tex., 2014 WL 1327706, at *9.* "That a party

[10] Def.'s Countercl. ¶¶ 68, 70, ECF No. 13.
[11] *Id.*

cannot claim fraudulent inducement to enter into an agreement based on representations allegedly made after formation of the contract is evident." *Id*. Here, TKO alleges that the challenged representations concerned T1's intent to continue using TKO's services and paying for those services under an already-existing Agreement. TKO does not allege that these representations induced it to enter into the Agreement or otherwise incur a contractual obligation. Because the alleged representations occurred after the Agreement was formed, they cannot support TKO's fraud or fraudulent-inducement claim.

**B. The Tortious Interference Claim**

To allege a tortious interference claim, Plaintiff must "establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damages or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W. 3d 671, 689 (Tex. 2017).

A breach of one contract may, in some circumstances, also constitute tortious interference with a third party's contract "if it is done with a purpose and effect of preventing the third party from performing its contract with another." *Stine v. Marathon Oil Co*., 976 F.2d 254, 262 (5th Cir. 1992). But a breach does not become tortious interference merely because it foreseeably or necessarily causes the nonbreaching party to breach, or otherwise impairs its ability to perform, a separate contract. "To hold that a defendant's breach of contract amounts to tortious interference with another contract which in turn depends on performance of the defendant's contract could open a floodgate of tortious interference claims." *Nat'l Rifle Ass'n of Am. v. Ackerman Mcqueen, Inc*., No. 3:19-CV-02074-G, 2021 WL 3618113, at *18 (N.D. Tex. Aug. 16, 2021).

TKO alleges that "T1 willfully and intentionally interfered" with a contract with Signature Back Office Services ("Signature") which provides TKO with payroll, taxes, workers' compensation, and unemployment benefits upon receipt of payment from T1 for the corresponding staff services.[12] According to TKO, T1 interfered with that agreement by refusing to pay more than $2.5 million in outstanding invoices, while knowing that its nonpayment would prevent TKO from fulfilling its obligations to Signature.[13]

These allegations do not establish tortious interference. TKO does not allege that T1 took action directed at preventing TKO or Signature from performing their contract, much less that T1 acted with the purpose of causing a breach of that agreement. Instead, the alleged interference was simply the downstream consequence of T1's alleged failure to pay under its own contract with TKO. If nonpayment under one contract could support a tortious-interference claim whenever it foreseeably left the counterparty unable to perform a separate contract, ordinary breaches of contract could routinely be transformed into tort claims. The Court therefore concludes that TKO has not adequately alleged the intentional interference necessary to state a claim for tortious interference.

## IV. CONCLUSION

For the foregoing reasons Plaintiff's Partial Motion to Dismiss is **GRANTED**. Plaintiff's fraudulent inducement claim is barred by the economic loss rule and does not satisfy the Rule 9(b)'s particularity requirement. Plaintiff's tortious interference claim likewise fails because it does not constitute the intentional interference necessary to state a claim. Accordingly, Counts III and IV of Plaintiff's Amended Complaint are **DISMISSED with prejudice**.

**SO ORDERED** on this **27th day** of **August, 2026.**

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE

[12] Def.'s Countercl. ¶¶ 77, 79, ECF No. 13.
[13] *Id*. at ¶ 79.